UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DANIELE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:22-CV-222 HEA |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner's application for writ of coram nobis brought pursuant to the All Writs Act, 28 U.S.C. § 1651. Petitioner filed his motion to overturn his conviction on February 9, 2022. After reviewing the petition and the record before the Court, the Court will summarily deny the petition pursuant to the abuse-of-the-writ doctrine.

**Factual and Procedural Background**

This action results from a criminal trial held in 1988, where

Petitioner was convicted of ten counts of mail fraud, one count of conspiracy and four counts of extortion or attempted extortion. The prosecution arose from an investigation into the management of the pension funds provided for disabled and retired members of the Fire and Police Departments of the City of St. Louis and their survivors. Other defendants indicted with Petitioner either pled guilty or were not prosecuted as a result of these plea agreements. *See Police Retirement System of St. Louis v. Midwest Investment Advisory Svc., Inc.,* 940 F.2d 351, 354-55 (8th Cir. 1991); *United States v. Daniele,* 886 F.2d 1046 (8th Cir. 1989). Ultimately, Petitioner was sentenced to seven years of imprisonment. *Id.*

As recounted in numerous past proceedings in this Court and in the Eighth Circuit Court

of Appeals, the evidentiary record indicates that the scheme to defraud the pension funds began in 1982. Donald Anton, one of Petitioner's co-defendants, was a prominent and politically active attorney who orchestrated the conspiracy to defraud the pension funds. *United States v. Daniele,* 886 F.2d 1046, 1048 (8th Cir. 1989); *Anton v. United States,* No. 4:94CV1877 GFG, at *3 (E.D.Mo. 1998); *Anton v. Police Retirement System of St. Louis*, 925 S.W.2d 900, 902 (Mo.Ct.App. 1996).

Anton conspired with pension fund officials and brokers to steer financial transactions to certain individuals who would, in turn, make payoffs to Anton and the officials. *Daniele*, 886 F.2d at 1049. Petitioner Daniele was a patrolman on the St. Louis Metropolitan Police force when, in September 1984, he ran for election to the Board of Directors of the Police Pension Fund ("PPF"). At trial, the government presented evidence that Petitioner was supported by Anton in this bid. However, there appears to be some question regarding this supposition. *Daniele*, 886 F.2d at 1049 n.6. In April 1985, Petitioner became Chairman of the PPF. This move involved Anton's support as well as that of other political figures. The government produced evidence that Petitioner indicated his desire for political assistance in being promoted to Sergeant. Evidence from Anton's appointment book showed that Petitioner met with Anton and others during a period when Anton was pressuring PPF money managers to send all their brokerage business to Anton's kickback partners.

During this period, Anton was also lobbying to replace one management firm, Midwest Advisory Management Services, ("Midwest"), with another, Investment Counselors, Inc. ("ICI"), and Petitioner was, for a time, supportive of this move. An official from Midwest, Jim Bridges, met with Petitioner to see whether he "had a preference for where the brokerage went." Bridges testified at trial that Petitioner replied "you know what the program is." Bridges concluded that

Petitioner was supporting Anton's pressure to use ICI, or Anton's favorite brokerage houses. *Daniele*, 886 F.2d at 1050. Petitioner successfully moved the PPF board to replace Midwest, and hours before Midwest received formal notice of this, it made unusual and large transactions, generating close to $100,000.00 in fees. Bridges, who had become a government informant, testified that Petitioner approved these trades. *Daniele*, 886 F.2d at 1050, n.8. Petitioner later voted to open the management contract to competitive bids. Problems with these arrangements and the eleventh-hour trades lead the PPF Board to plan a lawsuit against Midwest, and petitioner reported the firm to the Securities and Exchange Commission ("SEC"). *Daniele,* 886 F.2d at 1050-52 and n.17. At this time, Petitioner also supported several fellow officers in their unsuccessful election races for the PPF Board and another organization.

Anton offered campaign assistance, about which at least one officer was very suspicious. *Daniele,* 886 F.2d at 1050. Petitioner then met with an official from one of the other management firms hired by the PPF, Guaranty Trust Company ("Guaranty"), who had told his staff they might "test the waters" to see if Guaranty would still be pressured to favor Anton's brokers, I.M. Simon. At the meeting, Petitioner purportedly warned the official not to "test the waters." Since Anton had a conspirator on the official's staff, the government argued that this indicated Petitioner was communicating with Anton and was acting to protect the scheme. *Id.* at 1051.

In February of 1986, Petitioner heard from other sources about complaints of improprieties at Guaranty and reported them to a police commissioner, who was also on the PPF Board. *Daniele*, 886 F.2d at 1051. Petitioner shortly thereafter reported some of this information to federal investigators. However, at that point and in the course of assisting in PPF's own investigation, Petitioner repeatedly denied that he knew Anton. *Id.*  As federal investigators closed in on Anton, he told a witness that he never made any payments to Petitioner, but only tried to help him get a

promotion. *Id.* at 1051-52. Anton said he believed Petitioner was well-qualified anyway. Record evidence supported this. *Id.* at 1052, n. 15.

Although regarded as cooperative by police investigators, Petitioner continued to make statements denying or minimizing his familiarity with Anton, in conflict with the numerous meetings noted in Anton's seized appointment calendar and testified to by a government witness. *Id.* at 1052. The government conceded that it had no proof that Petitioner received money from the kickback scheme. His intent, the government contended, was to receive political assistance in a promotion. Petitioner contended that he did nothing for Anton but to support hiring a new management firm, in cooperation with other board members. *Id.* at 1052, n.17.

At trial, on May 25, 1988, after opening statements, Anton elected to plead guilty to three of the 24 counts against him; these were mail fraud conspiracy, extortion, and obstruction of justice. As part of the plea agreement, the government agreed to drop all additional charges against him and all charges against Anton's wife. *See Anton v. United States*, No. 4:94CV1877 GFG at *9, (E.D.Mo. 1998). The agreement would not go into effect, however, until sentencing, which was set for August 5, 1988. The civil case was still pending. Anton refused to testify on the grounds that he could incriminate himself. After a trial of at least two weeks, Petitioner was convicted. The record reflects that while Petitioner's attorney cross-examined witnesses, no defense witnesses were called and no evidence was put forth by the defense. In an affidavit Petitioner attached to his first petition for writ of error coram nobis filed in this Court, *see Daniele v. U.S.,* 4:95CV1658 (E.D.Mo. 1998), Petitioner asserted that although Anton pled guilty early in their joint criminal trial, Petitioner first understood that his defense counsel could question Anton to Petitioner's benefit. However, he later learned (during his trial) that Anton had invoked his privilege against

self-incrimination and Petitioner understood Anton therefore could not be compelled to testify. Petitioner was convicted of 15 counts and acquitted of six.

Extensive litigation followed Petitioner's conviction. Petitioner appealed his conviction on a number of grounds. While the Eighth Circuit upheld the conviction, it found that evidentiary errors and some other problems had occurred. First, Petitioner was not allowed to introduce an inconsistent statement made by a government witness, the official from Midwest, which apparently indicated that Petitioner had not approved the eleventh-hour trades. Nonetheless, since Petitioner was allowed to cross-examine this witness, the error was ruled harmless. *See Daniele,* 886 F.2d at 1052-53. The Court specifically noted, however, that it was not expressing a view on how new evidence against Midwest (obtained in the civil trial) would affect Petitioner's motion for a new criminal trial. *Id.* at 1053, n.19. The Eighth Circuit held that this error was central to the liability of Midwest (the key issue in the civil trial), but that it was "not so central to the issue of Petitioner's knowledge or intent that it is likely the judgment [of the jury] was substantially affected by it." *Id*. at 1057.

Second, Petitioner had not been allowed to introduce a videotape of one of the PPF Board meetings which, he believed would demonstrate that all of the board members initially agreed to hire ICI, the firm touted by Anton. Again, the Court found this was indeed admissible, but was not reversible error, for four reasons: it could have been excluded as cumulative; the minutes of that meeting were admitted; a board member was available for cross-examination; and Petitioner's counsel had failed to offer the trial court an evidentiary basis for overcoming the government's hearsay objection, stating "I don't know that I do [have a response]." *Id.* at 1053-54. On appeal, Petitioner argued, and the Court of Appeals agreed, that the basis should have been Fed.R.Evid. 803(24). *Id*.

Third, the official from Guaranty testified that he saw Petitioner over a Fourth of July holiday, and stated that his (the witness's) date commented on the large bankroll of cash Petitioner was holding. This testimony was hearsay and "unquestionably prejudicial." *Id.* at 1056. Although it should not have been allowed, the trial court instructed the jury to disregard it, and the Court of Appeals found no reversible error. *Id.*

Petitioner pointed out that his six other co-defendants began to plead guilty during the jury selection process and by the time the first witness was called, only Petitioner remained to be tried. Petitioner argued on appeal that this timing was prejudicial, largely because the government was allowed "to highlight evidence in its opening statement without having to connect that evidence to Daniele." *Id.* at 1055. The Court of Appeals ruled that the trial court's refusal to grant a mistrial was not an abuse of discretion. *Id.*

Finally, Petitioner argued that he was prejudiced because the trial court agreed to allow the government to question him (subject to timely and relevant objections) on another matter if he took the stand to testify in his own defense; and, although defense counsel told the jury in his opening statement that Petitioner would indeed so testify, this ruling foreclosed that option. Specifically, Petitioner was worried that prosecutors would cross-examine him about a 1986 IRS investigation of his alleged outside income. He had cooperated with federal investigators and had been assured that nothing he said would be used against him, "either directly or indirectly." *Id.* at 1054. He was never charged with any offense related to the investigation. *Id.* While such cross-examination would generally have been prohibited under Fed.R.Evid.404(b), and possible Rule 402, the government argued that it related to Petitioner's truthfulness and might have been admissible under Rule 608(b). The Court of Appeals held that it was within the trial court's discretion to determine these questions as they came up, rather than entirely prohibit them at the

outset. *Id.*

Ultimately, Petitioner argued that he was never actually involved in the racket his codefendants pled guilty to, and that he had no knowledge of the conspiracy or specific intent to defraud. The Eighth Circuit observed:

> There is evidence which supports defendant's position. There is no evidence defendant received any money from anyone as a result of the scheme, which started long before he became a member of the Police Pension Board. There is evidence that defendant ran for the Board on a platform which disparaged the money managers involved in the scheme based on their poor performance and high commissions, and that his actions on the Board were consistent with the actions of other Board members who were also concerned about the managers' performance. Defendant supported the investigation of Midwest and reported them to the SEC, actions which were arguably against the interests of those involved in directing brokerage through Midwest. Defendant also appeared to have been responsible for bringing the allegations of Harry Barr to the attention of Commissioner Frank, and cooperated with Frank in investigating the allegations made by Barr against Guaranty Trust.
>
> Viewing the evidence in light most favorable to the jury's verdict, however, there is also evidence from which a jury could conclude that Daniele had knowledge of the scheme, acted as Anton's "spy in the camp," and directed brokerage himself. [Here the court notes again that new evidence from the civil trial is not considered.] Daniele lied about his knowledge of and relationship with Anton, he provided Anton with secret information about the Board's actions, he told Bridges of Midwest "you know what the program is," and he told Finch of Guaranty Trust not to "test the waters." Anton's records show numerous meetings with Daniele and his tape-recorded statements implicate Daniele directly. These co-conspirator statements were properly admitted by the district court. *See Bourjaily v. United States,* 483 U.S. 171, 176 (1987); *United States v. Townsley*, 843 F.2d 1070, 1084 (8th Cir. ), *reh'g en banc on other grounds*, 856 F.2d 1189 (8th Cir. 1988). While the evidence against the defendant was by no means overwhelming, there is substantial evidence from which a jury could reasonably infer he was guilty of the crimes charged beyond a reasonable doubt. *See United States v. Karunatileka*, 820 F.2d 961, 965 (8th Cir. 1987); *United States v. McCrady*, 774 F.2d 868, 874-075 (8th Cir. 1985); *United States v. Lemm*, 680 F.2d 1193, 1205 (8th Cir. 1982).

*U.S. v. Daniele*, 866 F.2d at 1056-57.

The Court of Appeals concluded by urging the district court to "consider carefully any motion for reduction of sentence" from Petitioner. *Id.* at 1057.

On a motion for new trial, which was denied, the district court reduced Petitioner's eight-year sentence by one year. *United States v. Daniele*, 931 F.2d 486, 488 (8th Cir. 1991). On appeal from the reduction of the sentence, the Eighth Circuit noted that Petitioner argued, "perhaps with good reason," that his circumstances warranted a greater reduction." However, the court reasoned, in part, that since Petitioner had, while on bond, "[taken] hostage a trial witness at gunpoint," the mere one-year reduction was not inappropriate. *Id.* at 489.

Petitioner's motion for new trial was based in large part on the outcome of the civil action against him, *Police Retirement System v. Midwest Inv. Advisory Servs.,* 706 F.Supp. 708 (E.D.Mo. 1989), *aff'd*, 940 F.2d 351 (8th Cir. 1991). Petitioner was exonerated in that trial from charges of breaching his fiduciary duty to the pension fund. *Daniele*, 931 F.2d at 488. However, his arguments that the information developed in that trial constituted "newly discovered evidence" entitling him to a new criminal trial were unavailing. *Id.* at 489.

The Court of Appeals discussed at length the grounds for relief which involved the remarks of petitioner's co-defendant Anton at the close of the civil trial. In his closing argument, Anton, representing himself, said the following:

> Over there sits Tony Danielle [sic]. He is in this case, in Count 14. I am not in that count. I am in Counts 16 and 20, which are the counts making allegations concerning me. This is the first time anywhere that anyone officially has publically [sic] acknowledged that Tony Danielle [sic] and I did not conspire to do anything. I had no participation in this election as a trustee. You heard that before. There was no agreement that he hire nor fire Guaranty Trust Company, nor Midwest Investment. There was no agreement between Tony and I that he use only I.M. [sic] Simon as a broker. I agreed to circulate his resume for promotion, since I sincerely believed that he had an excellent police record, and deserved to be promoted. And I gave it to anyone that I thought would listen. Unfortunately, he was not promoted. Neither he, nor I had any promises or agreements that I would give him any money for doing anything, or he would give me any money for doing anything. In my opinion, he should not be liable in this case; and he should not even have been sued in this case.

*Daniele*, 931 F.2d at 488.

The Court of Appeals agreed with the District Court that these remarks, made in closing argument where Anton represented himself, did not constitute evidence; thus, they were not "newly discovered evidence" for the purposes of a new trial. *Id.* at 489.

The Court reasoned that the remarks were "purely legal arguments" and not testimony. The Court relied partly on the fact that Anton refused to testify at trial, invoking his right under the Fifth Amendment. "[We] think it highly improbable that Anton, who heretofore steadfastly refused to make any statement, would have chosen to testify *sua sponte* during closing arguments." *Id.* The Court further noted this about Anton's refusal to testify: "We remain unclear why Daniele failed to challenge Anton's invocation of the privilege against self-incrimination during closing arguments." *Id.*

The Court further noted this about Anton's refusal to testify: "We remain unclear why Daniele failed to challenge Anton's invocation of the privilege against self-incrimination during both the criminal and civil proceedings. Anton's guilty plea, which predated both trials, may have waived this right - - at least as to matters that the guilty plea resolved." *Id.* at 488 n.2.

Finally the Eighth Circuit rejected the argument that the civil verdict for Petitioner vindicated his efforts for a new criminal trial.

> We acknowledge the civil verdict in Daniele's favor, but cannot accord it much significance because Daniele's new trial motion failed to specify the civil charges against him, their elements, or the instructions and verdict form given to the civil jury. Without such information, we cannot begin to ascertain whether evidentiary variations between the two trials seemingly caused the different verdicts.

*Id.* at 489.

**Petitioner's 1995 Coram Nobis Proceeding**

As noted above, Petitioner brought a prior application for writ of error coram nobis in this Court, on September 1, 1995. *Daniele v. U.S.,* 4:95CV1658 CEJ (E.D.Mo. 1998). In his 1995 application for writ of error coram nobis, Petitioner essentially advanced two grounds for relief. First, he argued that juror misconduct fatally prejudiced his right to a fair trial. Second, he argued that he was wrongfully denied the opportunity to compel Anton's putative exculpatory testimony. Petitioner additionally argued that his attorney rendered constitutionally ineffective assistance.

After a full briefing by Petitioner and the Government, the Court reviewed Petitioner's claims and found both claims to be without merit. The petition for writ of error coram nobis was denied on December 3, 1998. The denial of the petition for writ was affirmed by the Eighth Circuit Court of Appeals on October 18, 1999. *See Daniele v. United States*, No. 98-4138 (8th Cir. 1999).

**Petitioner's 2014 Coram Nobis Proceeding**

Petitioner filed a second petition for writ of coram nobis on December 23, 2014. *Daniele v. United States*, No. 4:14-CV-2100 HEA (E.D.Mo). In his application for coram nobis, petitioner claimed that "although [petitioner has] extensively litigated his conviction, the pieces of the puzzle leading to his wrongful conviction have never been completely assembled to give this Court a true picture of his innocence." Those puzzle pieces, Petitioner contends, include: (1) the exclusion of Louis Bliele's testimony that Bridges knew his firm had been terminated the night before he was officially notified, in conflict with his trial testimony; (2) the exclusion of the videotape of the Board meeting, which showed that Petitioner voted for competitive bidding; (3) Anton's statements in his closing argument in the civil trial, in which he stated that Petitioner was innocent; and (4) the testimony of two experts at the civil trial who testified that Petitioner's actions were

inconsistent behavior for someone who wanted to benefit from fraud. The Court denied and dismissed Petitioner's application based on the abuse-of-the writ doctrine on March 27, 2019. *Id.* The Eighth Circuit Court of Appeals summarily affirmed this Court's judgment on January 21, 2020. *Daniele v. United States*, No. 19-2953 (8th Cir. 2020).

Despite the summary affirmance of the Court of Appeals, petitioner filed three new applications for writ of coram nobis in the 2014 action on June 15, 2020, July 23, 2020 and August 13, 2020. *See Daniele v. United States*, No. 4:14-CV-2100 HEA (E.D.Mo) (Docket Nos. 43, 44 and 47). Petitioner asserted that he would "continue over and over again" to submit petitions for coram nobis. He once again raised the same, or similar arguments to those made in his prior applications for writ of coram nobis. On August 17, 2020, the Court denied petitioner's applications for writ pursuant to the abuse-of-the-writ doctrine. *Daniele v. United States*, No. 4:14-CV-2100 HEA (E.D.Mo) (Docket No. 48). The Eighth Circuit summarily affirmed the judgment of the District Court on December 7, 2020. *Daniele v. United States*, No. 20-2977 (8th Cir. 2020).

**Petitioner's Claims in this Action**

In the present action, Petitioner asserts that he is entitled to either reversal of the charges in his criminal action, or a new trial. Petitioner also requests the ability to testify before the grand jury. Petitioner states that his "innocence is the only thing [he] needs addressed." He seeks to have all charges dismissed against him.

**Discussion**

The instant action is Petitioner's sixth request for writ of coram nobis in this Court. As this Court has discussed previously, "[a] writ of coram nobis is an 'extraordinary remedy,' and courts should grant the writ 'only under circumstances compelling such action to achieve justice' and to correct errors 'of the most fundamental character.'" *United States v. Camacho–Bordes*, 94 F.3d

1168, 1173 (8th Cir. 1996) (quoting *United States v. Morgan*, 346 U.S. 502, 511–12 (1954)). "Accordingly, a petitioner must show a compelling basis before coram nobis relief will be granted...and the movant must articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis." *Id*. (quotations and citations omitted); *see also Morgan*, 346 U.S. at 511 ("Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice.").

A petitioner must also provide sound reasons for his failure to seek appropriate earlier relief. *See Morgan*, 346 U.S. at 512; *McFadden v. United States*, 439 F.2d 285, 287 (8th Cir. 1971). A writ of error coram nobis cannot be used to relitigate issues already reviewed during prior post-conviction proceedings. *See Willis v. United States*, 654 F.2d 23, 24 (8th Cir. 1981) (per curiam) (absent credible new evidence or subsequent change in law, coram nobis petitioner is not entitled to another review of issues previously litigated and fully explored in § 2255 proceedings).

The abuse-of-the-writ doctrine applies to claims not raised in prior writ applications, such as those brought in this petition. "[I]n general[, abuse-of-the-writ] prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal habeas proceeding." *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). The doctrine "concentrate[s] on a petitioner's acts to determine whether he has a legitimate excuse for failing to raise a claim at the appropriate time." *Id.* The abuse-of-the-writ doctrine applies to coram nobis cases. *See United States v. Camacho-Bordes,* 94 F.3d 1168, 1172-73 (8th Cir. 1996).

The Court has previously denied five applications for writ of coram nobis brought by Petitioner. The Eighth Circuit Court of Appeals has summarily affirmed each of the denials. Petitioner cannot now continue to file the same motions over and over and over and over. No

further action will be taken by the Court in this regard. Although Petitioner claims he will continue to file the same motion until he gets relief, Petitioner will not be allowed to thwart this Court's authority and is cautioned that failure to adhere to this Court's Orders may give rise to a finding of contempt. This case is closed; there remains nothing to address. Petitioner shall not file additional motions for the same relief that has been denied.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's application for writ of coram nobis is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED** pursuant to the abuse-of-the-writ doctrine.

**IT IS FURTHER ORDERED** that no certificate of appealability shall be granted.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 18th day of March, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE